UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| HUNGERFORD & TERRY, INC., | ) |
| Plaintiff, | ) |
| vs. | ) 4:06-cv-0016-JDT-WGH |
| CITY OF LAWRENCEBURG, INDIANA; REYNOLDS INC.; and GENERAL FILTER, | ) |
| Defendants. | ) |

**ENTRY ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (Docket No.5)**[1]

The Plaintiff Hungerford & Terry, Inc. brings this lawsuit against the Defendants City of Lawrenceburg, Indiana (the "City"); Reynolds Inc. ("Reynolds"); and General Filter, alleging breach of contract and constitutional violations under 42 U.S.C. § 1983. Having reviewed the parties' briefs and heard evidence and oral argument on the issues, the court now rules on the Plaintiff's motion.

**I.   FINDINGS OF FACT**[2]

1. The City is in the process of constructing a new water treatment plant (the "Project").

---

[1] This Entry is a matter of public record and will be made available on the court's web site. However, the discussion contained herein is not sufficiently novel to justify commercial publication.

[2] The court's findings are limited for purposes of the current motion for preliminary injunction. They do not constitute conclusive findings that would carry over and apply to future proceedings in this action.

2. Reynolds is a construction company and the general contractor selected by the City for the Project.

3. The Plaintiff and General Filter are companies that design and manufacture water treatment systems for municipal and industrial applications. Both companies were considered possible sub-contractors to supply ion exchange equipment for the Project.

4. The City hired GRW as the engineering firm to manage the Project. As early as 2002, both the Plaintiff and General Filter were involved with talks with the City and GRW regarding their ability to supply the ion exchange equipment.

5. In 2003, GRW asked both the Plaintiff and General Filter for detailed design drawings and specifications that were job specific for the Project. General Filter supplied GRW with this information, but the Plaintiff choose not to supply the detailed information.

6. GRW used General Filter's detailed design drawings and specifications to develop the specifications for the Project. GRW designed the plant around these specifications.

7. The City opened the bidding to the general contractors on November 18, 2005. Reynolds was one of six contractors bidding for the job.

8. The bid documents produced by the City listed two possible ion exhange equipment manufacturers: General Filter was the first option and the Plaintiff was the second option. By default, the bid documents treated General Filter as the bidder's equipment manufacturer of choice unless the bidder specifically indicated that the Plaintiff would perform the job.

9. Reynolds indicated in its bid documents that the Plaintiff would manufacture the ion exchange equipment for the Project.

10. Reynolds was the second lowest bidder. The City determined that the lowest bidding contractor, Building Craft, was not responsible and it awarded the job to Reynolds on December 19, 2005. The Notice of Award is dated the same date.

11. Shortly after the City executed the Notice of Award, the City and GRW notified Reynolds that they were interested in substituting General Filter for the Plaintiff as the ion exchange equipment manufacturer. This was because the City and GRW designed the plant specifications around General Filter's detailed design drawings and specifications and were more comfortable using General Filter's equipment with the design layout.

12. Section 10.1 of the bid documents allows the City to request the services of a different subcontractor if the City has "reasonable objection" to the services of the proposed subcontractor.

13. Section 16.1 of the bid documents grants the City "the right to waive all informalities not involving price, time, or changes in the Work and to negotiate Contract terms with the Successful Bidder."

14. In a letter to Reynolds dated December 27, 2005, the City indicated its desire to substitute General Filter as the ion exchange equipment manufacturer. The letter states that Reynolds's substitution of General Filter for the Plaintiff was a consideration in awarding the contract.

15. Reynolds agreed to substitute General Filter for the Plaintiff.

16. The City and Reynolds executed the Project contract on January 10, 2006. The two parties also executed the Change Order, formalizing the substitution for General Filter, on January 10, 2006.

17. The City and the Plaintiff agree that there is no substantial difference between the actual ion exchange equipment supplied by either General Filter or the Plaintiff.

## II. ANALYSIS

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Goodman v. Ill. Dep't of Fin. & Prof'l Regulation*, 430 F.3d 432, 437 (7th Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). In assessing whether a preliminary injunction is warranted, a court must consider whether the party

seeking the injunction has demonstrated that: 1) it has a reasonable likelihood of success on the merits; 2) no adequate remedy at law exists; 3) it will suffer irreparable harm, which, absent injunctive relief, outweighs the irreparable harm the respondent will suffer if the injunction is granted; and 4) the preliminary injunction will not harm the public interest.  *Goodman*, 430 F.3d at 437 (citing *Joelner v. Vill. of Wash. Park*, 378 F.3d 613, 619 (7th Cir. 2004)).  The balancing of harm to the parties involves a sliding scale analysis: the more likely it is that the plaintiff will prevail on the merits, the less the balance of harms needs to favor the plaintiff.  *FoodComm Int'l v. Barry*, 328 F.3d 300, 303 (7th Cir. 2003); *Ty, Inc. v. Jones Group Inc.*, 237 F.3d 891, 895-96 (7th Cir. 2001).  This method is not mathematical or precise in any nature, but allows a court to exercise its discretion and good judgment in weighing and balancing the competing interests in molding appropriate relief.  *Ty*, 237 F.3d at 895-96.

    **A.**    **Likelihood of Success on the Merits**

At the outset, the court doubts whether the Plaintiff can succeed on the merits of its § 1983 claim.[3]  "In order to state a claim under § 1983, a plaintiff must allege that the defendants deprived [it] of a right secured by the Constitution or laws of the United States, and that the defendants acted under color of state law."  *Lekas v. Briley*, 405 F.3d 602, 606 (7th Cir. 2005) (quoting *Brokaw v. Mercer County*, 235 F.3d 1000, 1009

---

[3] While the Complaint also includes a breach of contract claim, the Plaintiff conceded, for the purposes of this motion, that its § 1983 theory is the basis for the request for injunctive relief.

(7th Cir. 2000)).  However, the Plaintiff faces difficulties in demonstrating that its allegedly deprived interest was a constitutionally protected property interest.

Before the City required Reynolds to switch to General Filter, the Plaintiff was the original ion exchange equipment subcontractor chosen by Reynolds and listed on its winning contractor bid documents.  As the original subcontractor listed on the winning bid, the Plaintiff claims that it had a protected property interest in performing the ion exchange job.  The Plaintiff further argues that the City, and perhaps the other Defendants, violated the Plaintiff's due process rights by eliminating its protected property interest in an arbitrary and capricious manner when it required Reynolds to give the job to General Filter.  This argument fails for two reasons: 1) the Plaintiff cannot show that any interest it may have rises to the level of a constitutionally protected property interest; and 2) the City's actions appear consistent with the existing procedural requirements.

The first question the court must answer is whether the Plaintiff indeed had a property interest protected by the Constitution.  "Property interests, of course, are not created by the Constitution.  Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).  As the Indiana Supreme Court has explained, "To have a property interest in a benefit, a person must have a legitimate claim of entitlement to it, derived from statute, legal rule or mutually explicit understanding." *Shook Heavy & Envtl. Constr. Group v.*

*City of Kokomo*, 632 N.E.2d 355, 361 (Ind. 1994) (citing *Roth*, 408 U.S. at 578).  The Plaintiff claims that it has an entitlement to the ion exchange job.  Such entitlement, argues the Plaintiff, comes from two sources: 1) the language of the bid documents; and 2) the language of Indiana Code § 36-1-12.

The bid documents set forth the many procedures to be followed by the parties during the bidding process.  According to the Plaintiff, § 10.1 of the bid documents establishes the proper procedures that the City should have followed if the City were to request the bidder to substitute the listed subcontractor.  The Plaintiff avers that by establishing certain procedural protections, § 10.1 creates protected expectation rights in the Plaintiff.  Because the City allegedly failed to follow these procedural requirements and instead made an arbitrary and capricious decision requesting that General Filter be given the job, the Plaintiff claims that the City violated the due process clause by depriving it of its right to perform the work.  This argument must fail.  First, "there can be no protected property interest in adherence to established procedure. . . . [P]rocedural rules which impose limitations on the exercise of discretion by decisionmakers are not themselves 'property' interests, and the mere failure to follow applicable rules or procedures does not, without more, amount to a due process violation."  *Shook*, 632 N.E.2d at 361 (citing *Rice v. Scott County Sch. Dist.*, 526 N.E.2d 1193, 1196 (Ind. Ct. App. 1988) (internal citation omitted)).  However, a protected interest may be found in the benefit whose enjoyment is sought to be regulated by the procedure.  *Id.* (citing *Rice*, 526 N.E.2d at 1196). To have a property interest in a benefit, a person must have a legitimate claim of entitlement to it that is derived from

statute, legal rule or mutually explicit understanding. *Id.* But, "[a] mere unilateral expectation or an abstract need is not a property interest entitled to protection." *Id.* (citing *Webb's Fabulous Pharmacies v. Bechwith*, 449 U.S. 155, 162 (1980)).

While the Plaintiff interprets the procedural requirements of the bid documents as creating an expectation of rights, this expectation constitutes nothing more than a mere unilateral expectation—not a property interest entitled to protection. As such, the bid documents do not entitle the Plaintiff with a protected property interest.

Similarly, the Plaintiff argues that Indiana Code § 36-1-12 grants it an expectation interest. Section 36-1-12-4(b) establishes certain procedures that cities must follow when soliciting and selecting bids for public work projects. Apparently, the Plaintiff contends that the City failed to comply with these procedures by making an arbitrary and capricious decision to substitute General Filter for the Plaintiff. Even if the City had failed to comply with these procedures, the court does not see how these procedures provide the Plaintiff with a protected property interest. The procedures never mention subcontractors or sub-bidders. Furthermore, as explained above, "the mere failure to follow applicable rules or procedures does not, without more, amount to a due process violation." *Shook*, 632 N.E.2d at 361 (citing *Rice*, 526 N.E.2d at 1196 (internal citation omitted)); *see also Kim Constr. Co. v. Bd. of Trs. of Vill. of Mundelein*, 14 F.3d 1243, 1246 (7th Cir. 1994) ("[P]rocedural interests under state law are not themselves property rights that will be enforced in the name of the Constitution."). The Plaintiff argues that it has an expectation that the city is going to follow the law. But this expectation alone does not constitute a protected property interest.

Even if the Plaintiff's expectation could be interpreted as a protected interest (which is not the case), the Plaintiff's § 1983 claim would still likely fail on the merits because the City appears to act within the procedural limitations cited by the Plaintiffs. Specifically, the City claims that § 16.1 of the bid documents permits the City to negotiate with the successful bidder who will perform the subcontract work in question here. Section 16.1 grants the City the right to negotiate contract terms except those terms concerning price, time, or changes to the work. Substituting General Filter does not alter the price or time of the work, and it does not appear to change the work. So, § 16.1 appears to grant the City the procedural and substantive authority to negotiate the substitution of a different subcontractor. But, even if § 16.1 does not, § 10.1 of the bid documents provides such authority for the City. Section 10.1 allows the City to request the services of a different subcontractor if the City has reasonable objection to the services of the proposed subcontractors. The Plaintiff suggests that the term "reasonable objection" requires a showing that the City's objection relates to some engineering aspect of the equipment. But § 10.1 does not require such a showing. The City was more comfortable using General Filter because it had supplied the City with detailed design drawings and specifications, which the City in turn used to design the plan for that aspect of the Project. This objection seems to be reasonable. Because of the reasonableness of the City's action, the City did not violate any established procedures and the Plaintiff's § 1983 claim would not likely succeed on its merits.

The Plaintiff's arguments clearly show that their main complaint lies with the City's alleged noncompliance with procedural requirements. However, the Plaintiff

concedes that it has no contractual rights because no contract existed between itself and the City or between itself and Reynolds. The Plaintiff fails to point to any other statute, common law rule, or mutually explicit agreement that establishes a substantive right or protected property interest. Instead, it admits that all it has is an "expectation" that the city is going to follow the procedural requirements of the bid documents and § 36-1-12. Unfortunately for the Plaintiff, this expectation is nothing more than a mere unilateral expectation, which is not a property interest entitled to protection. Furthermore, the Plaintiff fails to show that the City violated any procedural requirements. Accordingly, the Plaintiff is not likely to succeed on the merits of its § 1983 claim.

### B. Inadequate Remedy at Law and Irreparable Harm

The court has made its best rapid assessment of the viability of the Plaintiff's § 1983 theory and has found it deficient. But the court is not infallible, so there is always the potential that this theory has been underestimated and that a more expanded record and a more elaborate briefing process would provide the Plaintiff with some glimmer of hope on its constitutional claim. But that slim possibility does not encourage the issuance of a preliminary injunction.

Even if the Plaintiff were to be likely to succeed on the merits of its § 1983 claim, it fails to show how it would not be entitled to an adequate remedy for damages sustained under § 1983. To obtain a preliminary injunction, the Plaintiff must show that it has no adequate remedy at law. "Inadequate remedy at law does no mean wholly

ineffectual; rather, the remedy must be seriously deficient as compared to the harm suffered. The finding of irreparable harm to the plaintiff if the injunction is denied is a threshold requirement for granting a preliminary injunction." *Foodcomm Int'l v. Barry*, 328 F.3d 300, 304 (7th Cir. 2003) (citation omitted).

The Plaintiff contends that Indiana law precludes contractors on public works contracts from recovering lost profits in connection with a suit for the breach of the contract. (Mot. Prelim. Inj. 5 (citing *Irwin R. Evens & Son, Inc. v. Bd. of Indianapolis Airport Auth.*, 584 N.E.2d 576, 582-83 & n.5 (Ind. Ct. App. 1992); *Rice v. Scott County Sch. Dist.*, 526 N.E.2d 1193, 1197 n.3 (Ind. Ct. App. 1988).) Thus, according to the Plaintiff, if the court were to deny the preliminary injunction and allow General Filter to perform the subcontracting work and later find that Plaintiff should win on the merits, then the Plaintiff would not be entitled to the lost profits and it would be too late for the Plaintiff to perform the contract, leaving the Plaintiff with no adequate remedy for its lost profits.[4]

---

[4] The court is not entirely convinced that Indiana law precludes recovery of lost profits on a breach of contract claim involving a public works project. The citation to *Rice* simply confounds the court because it doesn't appear to address the issue of available remedies to a plaintiff in a breach of contract suit against a public entity. *Evens* does not appear to apply to this case either. Instead, *Evens* suggests that if a contractor were to begin work on a public works project and the court were to later invalidate the contract and allow another contractor to finish the project, then the first contractor would only be entitled to a quantum meruit recovery for the value of the work he provided, but not to the lost profits. In other words, the public entity would not be required to pay a contractor lost profits when the contractor performed his work under an invalid and questionable contract. As applied to the current situation, *Evens* would suggest that if the court were to require the Plaintiff to complete the subcontract work instead of General Filter, then General Filter would only be entitled to a quantum meruit award from the City. Neither the court nor the Plaintiff has been able to find any Indiana authority suggesting that Plaintiff would not be entitled to lost profits on its breach of contract claim.

The Plaintiff brings its claim under § 1983.  Although unlikely, if the Plaintiff ultimately succeeds under the § 1983 claim, then it would be entitled to the remedies provided under § 1983.  "[T]he basic purpose of a § 1983 damages award should be to compensate persons for injuries caused by the deprivation of constitutional rights." *Farrar v. Hobby*, 506 U.S. 103, 112 (1992) (quoting *Carey v. Piphus*, 435 U.S. 247, 254 (1978)).  This is not a case where it would be difficult to calculate the monetary damages necessary to compensate the Plaintiff if the Plaintiff were to succeed on the merits.  The evidence demonstrates that the Plaintiff submitted its sub-bid in the amount of $410,000.00 to Reynolds.  Of that amount, the Plaintiff expected to make 20-25% profit.  This amount represents the Plaintiff's lost profits—the amount it would be entitled to in order to compensate it "for injuries caused by the deprivation of constitutional rights."  *Farrar*, 506 U.S. at 112.  Since this amount would fully compensate the Plaintiff, it is an adequate remedy at law.

While the adequacy of the remedy depends on the success of the § 1983 claim, the Plaintiff relies on no other claim for relief for purposes of this hearing.  The Plaintiff concedes that it had no contractual relationship with either the City or Reynolds, and accordingly does not pursue its breach of contract claim for purposes of the preliminary injunction portion of this action.  Thus, the Plaintiff's action rises or falls with its § 1983 claim.  If it is to succeed, it must do so by way of § 1983, which would provide an adequate remedy if ultimately successful.  Accordingly, the Plaintiff has not demonstrated the lack of an adequate remedy at law and is not entitled to the preliminary injunction.

### C. Balancing of Harms

Before the court can award the preliminary injunction, the Plaintiff must also show that it has suffered an irreparable harm, which, absent injunctive relief, outweighs the irreparable harm the respondents will suffer if the injunction is granted. The balancing of harm to the parties involves a sliding scale analysis: the more likely it is that the plaintiff will prevail on the merits, the less the balance of harms needs to favor the plaintiff. *FoodComm Int'l v. Barry*, 328 F.3d 300, 303 (7th Cir. 2003); *Ty, Inc. v. Jones Group Inc.*, 237 F.3d 891, 895-96 (7th Cir. 2001).

First, as discussed above, the court may award monetary compensation for the harm that the Plaintiff will suffer if it ultimately succeeds on the merits. Because the Plaintiff has an adequate remedy at law, it cannot show that it will suffer irreparable harm. Second, even if the Plaintiff could show that it suffered an irreparable harm, its harm would not outweigh the irreparable harm the respondents would suffer if the court granted an injunction. The Plaintiff concedes that General Filter has at least the same expectation right as the Plaintiff. After all, General Filter is the subcontractor listed on the January 10, 2006 contract between the City and Reynolds. If it were to grant the preliminary injunction, the court would be depriving General Filter of its expectation, placing General Filter in the same position as the Plaintiff in this case. The City would also be harmed, facing the possibility of another lawsuit from General Filter. Moreover, a preliminary injunction requiring the use of the Plaintiff as the sub-contractor would effectively be a final determination as to which entity would supply the ion exchange equipment. By the time a trial can be held on the merits of the claims, along with the

inevitable appellate process, the Project would be long completed. If an order to use the Plaintiff's product results from an improvidently issued preliminary injunction, it would be far too late to undo such a mistake. Regardless, because the Plaintiff's § 1983 claim would entitle it to full compensation, the Plaintiff has failed to demonstrate irreparable harm. Without a showing or irreparable harm, the Plaintiff is not entitled to the preliminary injunction. The balance of harms weighs heavily against granting interim injunctive relief.

### III.    CONCLUSIONS OF LAW

1.  The Plaintiff has failed to establish a reasonable likelihood of success on the merits of its § 1983 claim that the City deprived it of a right secured by the Constitution because the Plaintiff had no property interest entitled to constitutional protection and because the City did not violate procedural requirements.

2.  The Plaintiff has an adequate remedy at law because it is entitled to full compensation of damages under § 1983 if it is ultimately successful on the merits of its § 1983 claim.

3.  The Plaintiff will not suffer irreparable harm if the injunction is not granted because it is entitled to full compensation under § 1983.

4.  The balance of the harms to the Plaintiff if the preliminary injunction is denied against the harms to the respondents if the preliminary injunction is granted does not weigh in favor of granting the preliminary injunction.

5. Because the Plaintiff is not likely to succeed on the merits, has an adequate remedy at law, and will not suffer irreparable harm, its motion for preliminary injunction should be DENIED.

## IV.   CONCLUSION

For the foregoing reasons, the Plaintiff's Motion for Preliminary Injunction (Docket No. 5) is **DENIED**.

ALL OF WHICH IS ORDERED this 16th day of February 2006.

John Daniel Tinder, Judge
United States District Court

Copies to:

Joseph W. Gelwicks
Rendigs Fry Kiely & Dennis LLP
jgelwicks@rendigs.com

John Mark Grundy
Greenebaum Doll & McDonald PLLC
jmg@gdm.com

Robert James Hoffman
Harrison & Moberly
rhoffman@h-mlaw.com

William C. Moyer
Lorch & Naville, LLC
wmoyer@lorchnaville.com

W. Edward Skees
Greenebaum Doll & Mcdonald PLLC
3300 National City Tower

101 South Fifth Street
Louisville, KY 40202

Joseph Wilber Votaw III
Votaw & Kisor
josephvotaw@earthlink.net

Chad E. Willits
Rendigs Fry Kiely & Dennis
cwillits@rendigs.com

Magistrate Judge William G. Hussmann